**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
WILLIAM WILSON               :
                             :
v.                           : Civ. No. 3:18-CV-01097 (WWE)
                             :
ANDREW M. SAUL, ¹ COMMISSIONER,:
SOCIAL SECURITY ADMINISTRATION:
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff William Wilson brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under Title II Social Security, 42 U.S.C. §401 <u>et seq</u>. ("the Act"). Plaintiff has moved to reverse or remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #20]** is **DENIED.** Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **GRANTED.**

---

¹ The President nominated Andrew M. Saul to be Commissioner of Social Security and the Senate Confirmed his appointment on June 4, 2019, <u>vote number</u> 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

## I. ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed. Plaintiff filed an application for DIB on August 26, 2013, alleging disability as of July 20, 2012.[2] [Certified Transcript of the Record, Compiled on September 26, 2018, Doc. #17 (hereinafter "Tr.") 11, 192-95]. Plaintiff alleged disability due to "back surgeries, chipped bones rubbing against nerves, back fusion, back fusion split due to accident, scar tissue in neck, numbness in hands and feet, replaced 4 discs in neck." [Tr. 76]. His Title II claim was denied initially on March 4, 2014, and on reconsideration on May 8, 2014. [Tr. 11, 75-92, 93-109]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on August 22, 2016. [Tr. 11, 128-29].

On September 8, 2017, Administrative Law Judge ("ALJ") Matthew Kuperstein held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 30-74]. Vocational Expert ("VE") Verna Arevalo also testified at the hearing. [Tr. 64-73]. On November 7, 2017, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 8-29]. Plaintiff filed a timely request for review of the hearing decision on November 27, 2017. [Tr. 189-91].

---

[2] Plaintiff's date last insured for Title II benefits is December 31, 2017. [Tr. 14].

On May 11, 2018, the Appeals Council denied review, thereby rendering ALJ Kuperstein's decision the final decision of the Commissioner. [Tr. 1-5].

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

## II.  STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d

33, 70 (S.D.N.Y. 2012) ("The Court first reviews the
Commissioner's decision for compliance with the correct legal
standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence."). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made
according to the correct legal principles." Johnson v. Bowen,
817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)
(alteration added) (citation omitted). The ALJ is free to accept
or reject the testimony of any witness, but a "finding that the
witness is not credible must nevertheless be set forth with
sufficient specificity to permit intelligible plenary review of
the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255,
260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a
finding is potentially dispositive on the issue of disability,
there must be enough discussion to enable a reviewing court to
determine whether substantial evidence exists to support that

4

finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Mr. Wilson must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

5

months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do h[is previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[ ] ... physical or mental ability to do basic work activities" to be considered "severe").[3]

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

---

[3] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

curiam). If and only if the claimant does <u>not</u> have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

<u>Id.</u>

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given his residual functional capacity." <u>Gonzalez ex rel. Guzman</u>

<u>v. Dep't of Health and Human Serv.</u>, 360 F. App'x 240, 243 (2d

Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); <u>Poupore</u>

<u>v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009) (<u>per</u> <u>curiam</u>)).

"Residual functional capacity" is what a person is still capable

of doing despite limitations resulting from her physical and

mental impairments. <u>See</u> 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV. THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Kuperstein concluded that plaintiff was not disabled under the Social Security Act. [Tr. 8-29]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 20, 2012, the alleged onset date, through his date last insured, December 31, 2017. [Tr. 14].

At step two, the ALJ found that plaintiff had degenerative disc disease of the cervical and lumbar spine status-post surgical treatment, bilateral carpal tunnel syndrome, obesity, and depression, all of which are severe impairments under the Act and regulations. [Tr. 14].

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (20 C.F.R. §§404.1520(d), 404.1525

and 404.1526). [Tr. 15]. The ALJ specifically considered Listing 1.04 (disorders of the spine); 1.02B (major dysfunction of a joint); 11.14A (peripheral neuropathy); and 12.04 (depressive, bipolar and related disorders). [Tr. 15-17]. The ALJ also conducted a psychiatric review technique and found that plaintiff had a moderate limitation in understanding, remembering, or applying information; interacting with others; concentration, persistence or pace; and adapting or managing oneself. [Tr. 16-17]. The ALJ found that claimant "does not rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial supports, or a highly structured environment to diminish the signs and symptoms of his mental disorder." [Tr. 17].

Before moving on to step four, the ALJ found that plaintiff had the residual functional capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b) except he is further limited to only occasional climbing of ramps or stairs and never climbing ladders, ropes, or scaffolds; to only occasional balancing, stooping, kneeling, crouching, or crawling; to only frequent but not constant fingering with both upper extremities; to needing to be able to avoid concentrated exposure to vibration; to work that involves understanding and remembering simple instructions in a nonpublic work setting where the tasks are routine and repetitive in a setting that does not require strict adherence to time or production quotas.

[Tr. 18].

At step four, the ALJ found plaintiff was unable to

perform any past relevant work as a tow truck driver. [Tr. 23]. At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. [Tr. 24-25].

The ALJ concluded that plaintiff had not been under a disability from July 20, 2012, the alleged onset date of disability, November 7, 2017, the date of the decision. [Tr. 25].

## V.   DISCUSSION

Plaintiff makes several arguments in support of his position that the ALJ's decision should be reversed and/or remanded. The Court will address these arguments in turn.

### A.   There is Substantial Evidence Supporting the ALJ's RFC Determination.

Plaintiff argues that the ALJ failed to properly determine his RFC, arguing that "[t]here is no basis for the ALJ's assertion that Claire Zang, LCS] overstated Mr. Wilson's degree of mental limitations; the ALJ erred in assigning Dr. Bruce-Tagoe's opinion "little weight" and in assigning "significant weight" to the opinions of the State agency physicians; and substantial evidence does not support a RFC of light work with limitations. [Doc. #20-1 at 8-21].

An ALJ has the responsibility to determine a claimant's RFC

based on all the evidence of record. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is an assessment of "the most [the disability claimant] can still do despite [his or her] limitations." 20 C.F.R. §404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner...an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record.... Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)(quoting Lewis v. Comm'r of Soc. Sec., No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y. Aug. 2, 2005)(internal citations omitted)). Nevertheless, plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. See 20 C.F.R. §§§404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); 42 U.S.C. §423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Although the RFC is assessed using "all the relevant evidence in [the] case record," id., the medical opinion of a treating physician is given "controlling weight" as long as it is "well-supported by medically acceptable clinical

11

and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. 20 C.F.R. §§ 404.1567(c)(2), 416.927(c)(2); see Poupore, 566 F.3d at 307.

When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996) SSR 06-03P, 2006 WL 2329939, at *3-4. The "[f]ailure to provide such ''good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.'" Burgess v. Astrue, 537 F.3d 117, 129-30 (2d Cir. 2008)(quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) and citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)("Commissioner's failure to provide

'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.")).

Plaintiff takes issue with the weight assigned to the opinions of LCSW Claire Zang and Dr. Charles Bruce-Tagoe and argues that the ALJ improperly assessed "significant weight" to the opinions of the State agency physicians and consultative psychiatric examiner. Defendant generally responds that the ALJ afforded proper weight to the medical opinions of record. [Doc. #21-1 at 5-16].

## 1.  Claire Zang, LCSW

Plaintiff first argues that that the ALJ erred in the assigning "little weight" to the opinion of her therapist Claire Zang, LCSW. [Doc. #20-1 at 10-12]. Specifically, plaintiff takes exception to the ALJ's finding that "Ms. Zang greatly overstates the claimant's degree of mental limitations ...." [Doc. #20-4 at 10 (citing Tr. 20)]. However, plaintiff failed to quote the ALJ's finding in full which states,

> The claimant's treating mental health provider, Claire
> Zang, LCSW, determined the claimant has serious to
> very serious mental health limitations in all areas of
> mental functioning. As discussed later in this
> Finding, the undersigned finds Ms. Zang greatly
> overstates the claimant's degree of mental limitation,
> but accepts that the claimant has severe mental
> limitations. The undersigned has significantly reduced
> the claimant's residual functional capacity to
> accommodate the claimant's mental and physical
> limitations.

[Tr. 19-20].

Only "acceptable medical sources" are considered treating sources whose opinions are entitled to controlling weight. See 20 C.F.R. §§404.1527(a)(2), (c), 416.927(a)(2), (c). Acceptable medical sources include, inter alia, licensed physicians and licensed or certified psychologists. See 20 C.F.R. §§ 404.1513(a), 416.913(a). Therapists, APRNs, physician assistants, and LCSWs, amongst others, are not acceptable medical sources, but are rather considered "other sources." See 20 C.F.R. §404.1513(d)(1)-(4), 416.913(d)(1)-(4); Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).[4] Opinion evidence from these "other sources" may be used to show "the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work[.]" 20 C.F.R. §§404.1513(d), 416.913(d). An ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]" SSR 06-03P, 2006 WL 2329939, at *6.

LCSW Zang completed a four-page questionnaire on October 10, 2013. [Tr. 401-04]. With regard to "social interaction" LCSW

_____

[4] 20 C.F.R. §404.1513(d)(1)-(4), 416.913(d)(1)-(4) and SSR 06-03P were rescinded effective March 27, 2017. It was in effect at the time of the ALJ's decision on November 7, 2017, because plaintiff filed his claims on August 26, 2013.

Zang opined that plaintiff had a "serious problem" interacting

appropriately with other in a work environment, asking questions

or requesting assistance, respecting/responding appropriately to

others in authority and getting along with others without

distracting them or exhibiting behavioral extremes. LCSW Zang

added that

> Pt. has had frequent fights [with] co-workers [and]
> bosses [and] has lost jobs due to inability to get
> along [with] others. Pt. tends not to accept help.
> Figures things out on his own or gives it to someone
> else to do. Bosses find Pt.'s angry outbursts
> disruptive

[Tr. 403].

With regard to "task performance" LCSW opined that

plaintiff had an "obvious problem" changing from one simple task

to another; a serious problem carrying out single-step

instruction; and a very serious problem carrying out multi-step

instructions; focusing long enough to finish assigned simple

activities or tasks, performing basic work activities at a

reasonable pace/finishing on time/ and performing work activity

on a sustained basis. [Tr. 403]. LCSW Zang added that plaintiff

can

> carry out single step instructions if physically
> capable as long as he is not being yelled at. Pt.
> cannot carry out multi-step instructions unless they
> are written down due to poor memory. Pt. has
> difficulty focusing due to poor concentration and
> being easily distracted. Pt. can switch tasks if he
> remembers. Takes Pt. a long time to finish anything

due to extreme pain. Cannot work due to physical and
psychiatric disabilities.

[Tr. 403].

The Court finds that the weight assigned to LCSW Zang's
opinion is not error, is supported by substantial evidence and
that the ALJ adequately explained his reasoning in accordance
with the regulations. The ALJ gave "limited weight" to LCSW
Zang's opinion correctly noting that plaintiff had not been
psychiatrically hospitalized and/or had not received intensive
outpatient treatment. [Tr. 20]. The ALJ properly considered that
although LCSW Zang had a treating relationship with plaintiff,
"she is not a psychiatrist or a licensed psychologist." [Tr.
22]. The ALJ found that Zang's treatment notes detailed
plaintiff's subjective reports, but "contain[ed] little
objective evidence or even basic mental status examinations."
[Tr. 22]. He correctly noted that plaintiff's subjective reports
were not entirely reliable. [Tr. 23]. For example, LCSW Zang
opinion states, in part, that plaintiff "lost many jobs due to
out-of-control anger." [Tr. 402]. However, the record shows that
plaintiff has a significant history of sustained employment for
from 2002 to 2011 with the same company, despite reporting to
LCSW Zang that he allegedly "lost jobs due to inability to get
along [with] people." [5] [Tr. 20, 23, 403]. <u>Johnson v. Comm'r of</u>

---

[5] Plaintiff also argues that the ALJ <u>should have</u> limited

16

Soc. Sec., 669 F. App'x 580, 581 (2d Cir. 2016)(summary order)("ALJs are not required to give controlling weight to opinions that are not consistent with other substantial evidence in the record.") (citing Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). Thus, the ALJ reasonably concluded that the statements contained in LCSW Zang's opinion was based on plaintiff's subjective self-report. [Tr. 22-23]. This is a proper basis for discounting an opinion. See Johnson, 669 F. App'x at 581 (finding that the ALJ did not err in deciding the weight to give various opinions where one doctor's opinion was not supported by the medical evidence and was at times internally inconsistent and another doctor's opinion relied primarily on the claimant's self-reported symptoms); Polynice v. Colvin, 576 F. App'x 28, 31 (2d Cir. 2014)("Much of what Polynice labels "medical opinion" was no more than a doctor's recording of Polynice's own reports of pain."); Lewis v. Colvin 548 F. App'x 675, 678 (2d Cir. 2013)(finding that ALJ was not

---

plaintiff to "no more than occasional contact with coworkers and no tandem or group work tasks citing several references in LCSW Zang's treatment records.[Doc. #20-4 at 18]. However, plaintiff's self-report that he had been fired "more than once" for yelling at supervisors and co-workers is not supported by his earnings records which show he sustained work dating from 1992, and worked for the same employer from 2002 through 2011. [Tr. 20 (citing Ex. 4D demonstrating sustained employment)].

required to give controlling weight to a doctor's opinion that was based on the claimant's subjective complaints).

Further, substantial evidence supports the ALJ's finding that plaintiff's symptoms "wax and wane in relation to psychosocial stressors." [Tr. 20 (citing Ex. 11F ); Tr. 462 (reporting stable mood); Tr. 463 (same); Tr. 464 (same); Tr. 474 (euthymic mood); Tr. 475 (stable mood); Tr. 481 (same); Tr. 485 (same)]. The ALJ accurately noted that plaintiff's symptoms worsened in April 2015, corresponding with the foreclosure on his house. [Tr. 20 (citing Ex. 11F at 2; Tr. 463 (April 29, 2015 "stressed with dysthymic mood. Upset that house will be going into foreclosure); Tr. 463 (May 6, 2015 ("Pt. presented as dysthymic and irritable."); Tr. 462 (June 10, 2015, "presented [with] relatively stable mood."); Tr. 21].

The ALJ correctly noted that the contemporaneous treatment notes from plaintiff's primary care physician, Dr. Bruce-Tagoe, indicate that plaintiff "show[ed] minimal abnormal mental findings. More often, the claimant presented with normal mental functioning." [Tr. 21 (compare Tr. 552, 536, noting abnormal mood and affect on 10/7/13, and 11/4/14, with Tr. 589 (8/3/17, noting normal judgment and insight, oriented to person, place and time, recent and remote memory intact and normal mood and affect); Tr. 507 (3/1/17, same); Tr. 509 (11/2/16, same); Tr. 514 (7/27/16, same); Tr. 528 (6/29/15, same); Tr. 533 (5/14/15,

same); Tr. 548 (12/9/13, same); Tr. 516 (3/23/16 ("patient reports doing well. Comorbid illnesses: anxiety and chronic pain syndrome. He has had no significant interval events. The patient is currently asymptomatic."); Tr. 538 (3/31/14, "The patient is currently asymptomatic.").

The ALJ properly considered plaintiff's GAF score finding that "GAF scores are of limited evidentiary value as they reveal only snapshots of impaired and improved behavior." [Tr. 21]. "Courts in the Second Circuit have noted that GAF scores are of little probative value in the disability context. Although these scores are relevant, they do not necessarily contradict a medical source's opinion that the claimant is disabled, because GAF scores do 'not have a direct correlation to the severity requirements in [the Commissioner's] disorders listings.'" Trankle v. Berryhill, No. 16-CV-846-FPG, 2017 WL 5988046, at *4 (W.D.N.Y. Dec. 4, 2017)(quoting Seignious v. Colvin, No. 6:15-cv-06065 (MAT), 2016 WL 96219, at *6 (W.D.N.Y. Jan. 8, 2016)). Here, LCSW Zang assigned plaintiff with a GAF score of 45, on or about December 2014, when completing an insurance form seeking authorization for continued outpatient psychotherapy services for the calendar year January 1, 2015 through January 1, 2016. [Tr. 465-67; see Tr. 472 (11/8/13 authorization from the insurance company for 45 days/visits from 11/6/13 to 11/6/14)]. The Court notes that on the "revised 12/10/14" form LCSW

assigned a GAF score of 45)]. However, on another version of the form, for the same application period, she assigned a GAF score of 55. [Tr. 468]. The Court finds no error in the assignment of "little weight" to the GAF score in light of ALJ's consideration of the whole record.

Substantial evidence supports the weight assessed to LCSW Zang's opinion and the ALJ's finding was adequately explained in accordance with the regulations. The Court finds no error on this claim.

Plaintiff next argues that the Mental RFC

> does not fully encompass Mr. Wilson's significant mental impairments resulting from anxiety, depression, and chronic pain. The ALJ should have included a limitation to not just routine and repetitive tasks, but simple, one to two step tasks. The ALJ should also have limited Mr. Wilson to short period[s] of attention and concentration, with frequent breaks.

[Doc. #20-1 at 16-18 (emphasis added)]. Although, plaintiff acknowledges that the ALJ's RFC limited him to work involving simple instructions, routine tasks in a non-public setting that did not require strict time or production quotas, he argues that the RFC "should" have been more restrictive. Id. Defendant correctly argues that "plaintiff requests a re-interpretation of the evidence in a manner more favorable to him." [Doc. #21-1 at 14].

In addition to the evidence cited above, the Court finds that the Mental RFC is also supported by the report of the

Consultative Psychiatric Examiner Dr. Nancy Kelly and the State
Agency Psychiatrists. Dr. Kelly's opinion that plaintiff may
have mostly mild to moderate limitations wholly supports the
ALJ's RFC finding limiting plaintiff to simple routine work.
[Tr. 18; 408-09]. Dr. Kelly opined that plaintiff may have a
"mild limitation" following and understanding simple directions
and performing simple tasks independently; maintaining a regular
schedule; making appropriate decisions, relating adequately with
others, and appropriately dealing with stress. [Tr. 408]. The
doctor also opined that plaintiff may have a "moderate
limitation" maintaining attention and learning new tasks and a
"marked limitation" performing complex tasks independently. [Tr.
408].

The ALJ also considered the opinions of the State agency
psychologists Doctors Leveille and Harvey assessing "significant
weight" to their mental RFCs and finding that "[a]lthough the
claimant submitted additional evidence at the hearing level, the
additional evidence is not inconsistent with the assessments of
the State agency doctors." [Tr. 23].

On January 24, 2014, Dr. Leveille reviewed plaintiff's
medical records and performed a psychiatric review technique and
mental RFC assessment of plaintiff's work-related abilities and
limitations. [Tr. 85-86; 88-90]. On April 30, 2014, Dr. Lindsey
Harvey completed the same review on reconsideration. [Tr. 101;

105-07]. In determining plaintiff's mental RFC, Dr. Leveille found that plaintiff was "moderately limited" in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest period. The doctor found plaintiff "moderately limited" in his ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes. In assessing "adaption" limitations, the doctor found plaintiff "moderately limited" in his ability to respond appropriately to changes in the work setting. [Tr. 90].

Dr. Harvey's mental RFC differed only slightly from Dr. Leveille, essentially adopting the mental RFC on initial review but added that plaintiff was "moderately limited" in his ability to understand and remember detailed instructions; and setting realistic goals or making plans independently of others. [Tr. 105, 107].

Plaintiff provides no citation to support his contention that the term "mild mean[s] occasional,[and] moderate mean[s]

constant" and should be translated into vocational terms supporting a more restrictive RFC. [Doc. #20-4 at 16-18].

"It is well-settled that a consulting [] examiner's opinion may be given great weight and may constitute substantial evidence to support a decision." Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018)(citing cases); see Rosier v. Colvin, 586 F. App'x 756, 758 (2d Cir. 2014)(summary order) (consultative examiners opinion constitutes substantial evidence supporting ALJ's decision to accord little weight to treating source). "It is also generally accepted that a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence." Id. (citation omitted).

The Court has painstakingly reviewed the record and finds that there is no error in the weight assigned to the medical opinions of record. The ALJ's Mental RFC is supported by substantial evidence of record.

### 2. Dr. Charles Bruce-Tagoe

On September 7, 2016, Dr. Bruce-Tagoe, plaintiff's primary care physician, completed a three-page "Medical Opinion Re: Ability to do Physical Activities" questionnaire consisting of fill in the blank questions, yes and no questions, and check off and/or circle boxes. [Tr. 592-94]. Dr. Bruce-Tagoe opined that plaintiff could walk two city blocks without resting;

continuously sit and or stand for two hours at a time; he could

stand/walk a total of two hours and sit for a total of four

hours in an eight hour workday; he would need a job that

permitted shifting positions at will and unscheduled breaks of

approximately fifteen to thirty minutes. [Tr. 592-93]. He opined

that plaintiff could frequently lift twenty pounds and

occasionally lift fifty pounds. [Tr. 593]. The doctor noted no

limitations with repetitive reaching, handling or fingering.

[Tr. 593]. Plaintiff would be limited to bending and twisting at

the waist thirty-percent of the workday. [Tr. 593]. The doctor

found plaintiff did not need to avoid any environmental

exposures and could occasionally ("less than 1/3 of the

workday") twist, stoop (bend), crouch, climb stairs and never

climb ladders. [Tr. 594]. Last, the doctor opined that

plaintiff's impairments were likely to produce good days and bad

days and on average would cause absence from work more than

twice a month. [Tr. 594].

Plaintiff was seen by Dr. Bruce-Tagoe beginning in

September 2011. [Tr. 584-85]. The ALJ accurately found that the

doctor's

> examination notes show essentially benign physical
> examinations and the claimant appeared well and was in
> no acute distress. Those benign examination findings
> are also inconsistent with the debilitating
> limitations described by Dr. Tagoe. The claimant did
> have back-related problems on exam in July and
> November 2012. But exams thereafter reveal no

> significant physical limitations, as discussed earlier
> in this Finding.

[Tr. 22 (citing Ex. 12F); compare Tr. 570-71 (7/10/12); Tr. 568-69 (11/6/12); Tr. 565-67 (12/11/12); Tr. 542-44 (2/17/14, initial evaluation of chronic low back pain, "patient is currently experiencing symptoms."), with Tr. 562-64 (1/8/13, noting normal gait and station, no acute distress); Tr. 559-61 (3/12/13, noting "patient is currently asymptomatic" with normal gait and station); Tr. 555-58 (5/13/13, preoperative visit for an Anterior Cervical Discectomy with plates. Noting "unable to walk four blocks without symptoms, but able to walk two flights of stairs without symptoms. Examination was positive for neck pain. Normal gait and station was noted.); Tr. 553-54 (9/9/13, no acute distress); Tr. 550-52 (10/7/13, follow-up for erectile dysfunction, noting abnormal mood and affect, "anhedonic, blunted, flat and unemotional"); Tr. 545-49 (12/9/13, annual examination with the exception of hemorrhoids, all systems were normal including muscloskeletal, neurologic and psychiatric); Tr. 538-41 (3/31/14, follow-up for depression, "patient is currently asymptomatic, all systems, including musculoskeletal system, were normal); Tr. 534-37 (11/4/14, follow-up of erectile dysfunction, noting abnormal mood and affect, "blunted, humorless, indifferent"); Tr. 530-33 (5/14/15, "patient states that his depression has improved since the last visit." "He

describes this as moderate in severity." "He has had no significant interval events."); Tr. 525-29 (6/29/15, annual examination, all systems were normal, including musculoskeletal, neurologic and psychiatric); Tr. 516-19 (3/23/16, seen for follow-up of chronic back pain. "The patient reports doing well."); Tr. 511-15 (7/27/16, annual examination, all systems were normal, including musculoskeletal, neurologic and psychiatric. Depression screening was negative); Tr. 504-07 (3/1/17, follow-up appointment of chronic neck pain and chronic pack pain. "The patient reports doing well," "improved headache, improved neck pain, improved back pain" "the patient states his depression has improved since the last visit."); Tr. 586-89 (8/3/17, annual examination, all systems were normal, including musculoskeletal, neurologic and psychiatric)].

Plaintiff was last seen by Dr. Bruce-Tagoe on August 3, 2017, for an annual examination. [Tr. 586-89, 503]. The doctor noted, in part, that "[t]he patient's health since the last visit is described as good." [Tr. 586]. Review of all systems were negative and the doctor noted that plaintiff was in "no acute distress, well appearing and well nourished." [Tr. 586, 588]. Once again physical examination for all body systems, including the musculoskeletal system, neurologic system and psychiatric, were normal. [Tr. 588-89].

Dr. Bruce-Tagoe did not support his opinion with any

clinical findings made in the course of his treatment. See
Poupore, 566 F.3d at 307. The ALJ reviewed all of Dr. Bruce-
Tagoe's treatment records and concluded that "those benign
examination findings are ...inconsistent with the debilitating
limitations described by Dr. [Bruce-]Tagoe" in his opinion. [Tr.
22]. Further, as set forth above, the ALJ properly considered
the neurosurgeon's treatment records, the medical imaging and
diagnostic testing. [Tr. 20, 22 (summarizing the neurosurgeon's,
Dr. Kenneth Lipow, treatment records); Tr. 19 (summarizing
medical imaging and diagnostic testing). The ALJ's RFC finding
that plaintiff can perform light work with limitations is
supported by substantial evidence of record. [Tr. 18].

The ALJ's finding that the limitations assessed by the
doctor "show some abnormal findings, but not to the degree
alleged by the claimant" is supported by substantial evidence.
[Tr. 20]. Simply put, the limitations assessed in the 2016
opinion were not based on contemporaneous treatment records or
physical examinations and cannot be reconciled with the medical
evidence. The doctor's treatment records preceding the
completion of this 2016 Medical Opinion form do not support
these functional limitations. The ALJ gave valid reasons for
according little weight to Dr. Bruce-Tagoe's opinions in
determining Wilson's functional limitations. Legg v. Colvin, 574
F. App'x 48, 49 (2d Cir. 2014)(summary order).

Indeed, "checklist forms such as [Dr. Bruce-Tagoe's "Medical Opinion re: Ability to do Physical Activities" form], which require only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a disability analysis." Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993); Scitney v. Colvin, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014) ("Form reports [composed of checklists and fill-in-the-blank statements] are, by their nature, of limited evidentiary value.")(citing Gray v. Astrue, No. 09-CV-00584, 2011 WL 2516496, at *5 (W.D.N.Y. June 23, 2011) and Mason, 994 F.2d at 1067); Drejka v. Comm'r of Soc. Sec., 61 F. App'x 778, 782 (3d Cir. 2003)("The ALJ was entitled to review the record in totality and to discount the treating physician's opinion...[claimant's] treating physician made the determination that she was disabled only in a form report. We have characterized such a form report, in which the physician's only obligation was to fill in blanks, as "'weak evidence at best.'")(quoting Mason, 994 F.2d at 1065). The Court finds that the ALJ appropriately considered the nature of the form requiring the doctor to check-off or circle a claimant's limitations.

Further, the treatment records from plaintiff's

neurosurgeon are consistent with the examination findings of Dr. Bruce-Tagoe. Dr. Kenneth Lipow performed a Decompressive Laminectomy and Fusion in October 2011, and an Anterior Cervical Discectomy with Fusion in May 2013. [Tr. 388-99; 374-86]. In post-surgical appointments following his back surgery, plaintiff reported "resolution of prior lower extremity symptoms since surgery" and reported "excellent results with respect to his low back pain and lower extremity pain, numbness, tingling and weakness." [Tr. 438 (11/1/11); Tr. 437 (12/8/11)]. Notwithstanding renewed complaints of low back pain following an accident on July 20, 2012, Dr. Lipow's noted "slight improvement with moderate back pain." [Tr. 431 (7/24/12)]. On September 13, 2012, plaintiff reported that he returned to work despite bilateral low back pain. Dr. Lipow noted that plaintiff appeared in "moderate distress. Gait is antalgic, limping." [Tr. 429]. Diagnostic imaging of the lumbar spine showed no vertebral compression fracture and a solid bilateral L5/S1 fusion. [Tr. 426-29; Tr. 426 (1/3/13 review of Lumbrosacral Spine CT and X-rays)]. On February 19, 2013, plaintiff reported "instant onset of relief" to low back pain after lumbar epidural injections. [Tr. 425]. Despite returning to Dr. Lipow for consultation and treatment for cervical pain, there is no notation regarding low back pain. [Tr. 424 (3/14/13); Tr. 423 (4/25/13); Tr. 422 (5/16/13); Tr. 421 (6/11/13). Indeed, plaintiff did not return

29

for treatment or surgical evaluation with his neurosurgeon Dr.
Lipow after he completed his post-surgical examinations
following cervical surgery. At a post-operative visit on June
11, 2013, plaintiff reported "complete resolution of bilateral
upper extremity numbness and tingling." [Tr. 421]. On
examination, Chris J. Dall, PA-C noted that plaintiff was
"alert, conversant, in no acute distress. Gait is intact." [Tr.
421]. At a post-operative visit on July 2, 2013, Dr. Lipow noted
that although plaintiff complained of low back pain his
"physical examination is unchanged" and referred plaintiff to
physical therapy. [Tr. 411]. In the last treatment record, dated
November 21, 2013, Dr. Lipow noted that plaintiff reported a
diagnosis of bilateral knee arthritis and it was recommended
that he "pursue pain management and physical therapy, as this is
not thought to be surgical." [Tr. 410]. On examination, Dr.
Lipow noted "He has a right body list when standing. Straight
leg raising is negative bilaterally to 90 degrees, but he
complains of bilateral knee joint pain. He demonstrated 5/5
strength. Sensory appreciation is intact bilaterally." [Tr.
410].

    As discussed above, the treatment records from Drs. Bruce-
Tagoe and Lipow do not support a conclusion that Wilson is
entirely unable to perform an RFC of light work with
limitations. See Poupore, 566 F.3d at 307.

Accordingly, the Court finds that the ALJ's assessment of Dr. Bruce-Tagoe's opinion was not error and was supported by substantial evidence.

### 3. **State Reviewing, Non-Examining Sources**

At the initial level of review, Dr. Maria Lorenzo provided a physical RFC assessment dated March 4, 2014. [Tr. 86-88]. At the reconsideration level of review, Dr. Nisha Singh provided a physical RFC assessment dated May 8, 2014. [Tr. 102-05]. Plaintiff argues that the "non-treating and non-examining doctors who were missing over three years of relevant medical evidence are not entitled to significant weight." [Doc. #20-4 at 15].

"Although plaintiff fails to support that argument with a citation to any authority, there is case law in this District which has found error when an ALJ relied on the opinion of a non-examining source who did not have the benefit of reviewing the entire record." Gonzalez v. Berryhill, No. 3:17CV01385(SALM), 2018 WL 3956495, at *13 (D. Conn. Aug. 17, 2018)(citing Jazina v. Berryhill, No. 3:16CV01470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017)). Here, there is no indication that the later received medical evidence would have had any effect on the opinions of Doctors Lorenzo and/or Singh. Nor does plaintiff assert that argument.

An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§404.1512(b)(6), 404.1513(c), 404.1527€, 416.912(b)(6), 416.927(e); _Frye ex rel. A.O. v. Astrue_, 485 F. Appx. 484, 487 (2d Cir. 2012)("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). As set forth above, the ALJ did not solely rely on the State agency doctors physical RFC but on the entirety of the record. The Court finds no error on this claim.

### 4. The Physical RFC is Supported by Substantial Evidence

Plaintiff argues the medical evidence does not support an RFC of light work with limitations [Doc. #20-1 at 15-21].

Despite plaintiff's arguments to the contrary, the ALJ's RFC determination is supported by substantial evidence of record. The ALJ considered the objective medical evidence, diagnostic testing, State agency physicians and Doctors Bruce-Tagoe and Lipow's treatment records in his decision. [Tr. 14-23].

Plaintiff seems to argue that the ALJ overlooked evidence of "arm pain, worse on the left side," from LCSW Zang's

treatment record in March 2015. [Doc. #20-4 at 18 (citing Tr. at 475)]. In June 2014, LCSW Zang noted that plaintiff stated he "had to cut [his] hair . I couldn't reach it to comb it because of the arthritis." [Doc. #20-4 at 18 (citing Tr. 486)]. These isolated remarks recorded by his therapist does not constitute competent medical evidence. Plaintiff also cites to a treatment record in March 2016, when plaintiff complained of chronic back pain. [Doc. #20-4 at 18-19 (Tr. 516-19)]. However, plaintiff failed to state that the appointment with Dr. Bruce-Tagoe was a follow-up appointment for chronic back pain and "[t]he patient report[ed] doing well. There are no comorbid illnesses." [Tr. 516]. After Dr. Lipow performed an Anterior Cervical Discectomy and Fusion in May 2013, plaintiff reported "complete resolution of bilateral upper extremity numbness and tingling," [Tr. 421 (6/11/13)], reporting he was "much improved with respect to neck pain and bilateral upper extremity pain, numbness, tingling and weakness" [Tr. 411 (7/2/13)], and "[he] has done well with respect to his neck pain and radiculopathy." [Tr. 410 (11/21/13)]. There are no further treatment records referencing neck, arm or shoulder pain from plaintiff's neurosurgeon Dr. Lipow, nor does plaintiff cite to any other medical evidence.

Indeed, the ALJ demonstrated that he carefully considered Doctors Bruce-Tagoe and Lipow's treatment records, and the State agency physicians and diagnostic testing. [Tr. 14-23]; .

33

"But substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*. Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(emphasis in original) (citing Selian v. Astrue, 708 F.3d 409, 417 (2d Cir.2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld."); Talavera*,* 697 F.3d at 151 (limiting our review to "determining whether *the* SSA's conclusions were supported by substantial evidence" (emphasis supplied))).

The limitations noted in the treatment records and the diagnostic testing support the ALJ's RFC findings. Other substantial evidence of record, recited in the Court's discussion above, supports the ALJ's findings. Thus, for the reasons stated, the Court finds no error in the ALJ's RFC assessment, which is supported by substantial evidence of record.

## B. Step Five Analysis

Last, plaintiff challenges the ALJ's Step Five determination arguing that it is not supported by substantial evidence because the vocational expert's testimony was based on a faulty hypothetical, and, the ALJ's reliance on the vocational expert's testimony was error because the number of jobs in the national and local economy are insufficient. [Doc. #20-4 at 22-

23 ]. Defendant responds that "plaintiff's arguments are meritless." [Tr. 21-1 at 16].

Although plaintiff contends that the RFC relied on by the Vocational Expert ("VE") was "incomplete" and he "cannot perform" the jobs identified by the VE, this argument is essentially a rehashing of the earlier allegations that the ALJ did not properly determine plaintiff's RFC. [Doc. 20-4 at 22-23]. For the reasons set forth above, the ALJ properly weighed all the evidence and determined an RFC that was supported by substantial evidence of record.

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and accurately reflects the limitations and capabilities of the claimant involved." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (internal citation and quotation marks omitted); see also Mancuso v. Astrue, 361 F. App'x. 176, 179 (2d Cir. 2010) (upholding an ALJ's hypothetical where "the ALJ's hypothetical mirrored [plaintiff's] RFC, which ... was supported by substantial evidence in the record[ ]"). Here, the ALJ presented the VE with a hypothetical which tracked the RFC determination. [Tr. 64-73]. As the testimony of the VE is consistent with the findings of the ALJ and the evidence in the record, there is substantial evidence supporting the ALJ's

determination that the plaintiff can perform a significant number of jobs that exist in the national economy. Accordingly, this argument is without merit. See, e.g., Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (citations omitted)("An ALJ may rely on a vocational expert's testimony regarding a hypothetical so long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved."); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 114 (2d Cir. 2010)("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment.") (citing Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir. 1983)(approving a hypothetical question to a vocational expert that was based on substantial evidence in the record)). As previously stated, the ALJ properly weighed and considered the evidence of record, and the RFC determination is supported by substantial evidence.

Plaintiff next argues that the jobs the VE testified were available in significant numbers are not actually so available, contending that there are "zero positions nationwide" for "Dental Floss Packager." [Doc. #20-4 at 22]. Defendant argues, and the Court agrees, that "[p]laintiff presents no rationale for challenging the vocational expert's numbers and does not

36

explain how his numbers were derived." [Doc. #21-1 at 17];

McIntyre, 758 F.3d at 152 ("[A] vocational expert is not

required to identify with specificity the figures or sources

supporting his conclusion, at least where he identified the

sources generally." (citing Brault v. Soc. Sec. Admin., Comm'r,

683 F.3d 443, 450 (2d Cir. 2012)).

In response to the ALJ's hypothetical, which was based on

the RFC, the VE identified three occupation that plaintiff could

perform, with the following numbers of jobs nationally: (1)

gluer, 196,000 jobs nationally; (2) marker, 125,000 jobs

nationally; and (3) packer, 160,000 jobs nationally. [Tr. 68].

The ALJ found that based on the VE's testimony and "considering

the claimant's age, education, work experience, and residual

functional capacity, the claimant is capable of making a

successful adjustment to other work that exists in significant

numbers in the national economy." [Tr. 25]; 20 C.F.R. § 404.1566

("Work exists in the national economy when there is a

significant number of jobs (in one or more occupations) having

requirements which you are able to meet with your physical or

mental abilities and vocational qualifications.").

Although plaintiff contends that the job of packer "has

zero positions nationwide" and only a "small number of self-

employed positions nationwide," [Doc. #20-4 at 22], "[t]he

Commissioner need show only one job existing in the national

economy that [claimant] can perform." Bavaro v. Astrue, 413 F.

App'x 382, 384 (2d Cir. 2011)(citing 42 U.S.C. §423(d)(2)(A); 20

C.F.R. §404.1566(b)); see Camille v. Berryhill, Civ. No.

3:17CV01283(SALM), 2018 WL 3599736, at *16 (D. Conn. July 27,

2018)(finding no error where ALJ concluded that 25,800 jobs

nationally constituted a significant number)(citing cases).

At the hearing, the VE identified the sources of her data,

stating that her testimony was consistent with the Dictionary of

Occupational Titles. [Tr. 72]. Plaintiff's counsel was present

at the hearing and had a full opportunity to cross-examine the

VE and explore the limitations of the DOT methodology, including

the number of jobs existing in the national economy.[6] [Tr. 69-

71].

> When [claimant's] counsel cross-examined the VE, he
> was given a full opportunity to explore the
> limitations of the SOC-to-DOT mapping methodology,
> including challenging some of the expert's specific
> numbers ... In sum, [claimant's] attorney had a full
> opportunity to explain his objections in significant
> detail. Nothing more was required.

Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 450–51 (2d

Cir. 2012). The ALJ did not err in crediting the testimony of

the VE on the number of jobs existing in the national economy

for each occupation. Bavaro, 413 F. App'x at 384 ("We decline

Bavaro's invitation to take judicial notice of the decline of

---

[6] Indeed, Attorney Yelner is also counsel on this appeal to the
district court. [Tr. 30].

the photofinishing industry and deem the position infeasible for her. A vocational expert testified to the existence of such jobs at the national and regional level. The ALJ was entitled to credit that testimony, see 20 C.F.R. § 404.1566(e), and we will not disturb that finding based upon Bavaro's conclusory proclamations to the contrary.").

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's capabilities; it is to review the ALJ's decision for any reversible error. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet, 523 F. App'x at 59 (citations omitted). For the reasons stated, the Court finds no error in the ALJ's assessment of plaintiff's credibility, which is supported by substantial evidence of record.

Accordingly, the ALJ appropriately relied on the VE's testimony at step five of the sequential evaluation.

## VI.   CONCLUSION

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings **[Doc. #20]** is **DENIED**. Defendant's Motion for Judgment on the Pleadings **[Doc. #21]** is **GRANTED**.

The plaintiff's complaint [Doc. #1] is **DISMISSED with**

**prejudice**. The Clerk of the Court is directed to enter judgment and close the case.

SO ORDERED at Bridgeport, Connecticut this 25th day of June 2019.

_____/s/_____
WARREN W. EGINTON
UNITED STATES DISTRICT JUDGE